UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| CHARLA DINKINS, | ) | |
|---|---|---|
| Movant, | ) | |
| vs. | ) | Case No. 1:15CV00104 SNLJ |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Charla Dinkins, a person in federal custody. On March 10, 2014, Dinkins plead guilty before this Court to the offense of interference with commerce by threat or violence and aiding and abetting the possession of a firearm in furtherance of a crime of violence and, on June 9, 2014, this Court sentenced Dinkins to the Bureau of Prisons for a term of 102 months. Dinkins' § 2255 motion, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

**FACTS**

**A. The Indictment.**

On August 15, 2013, a grand jury for the Eastern District of Missouri, Southeastern Division, returned a two-count indictment against four defendants; Charla Dinkins, Darryl House, Kevin Stitt and Keyessence Fountain. Count I of that Indictment charged that the four defendants, aided and abetted by each other, committed the offense of Interference With Commerce by Robbery in violation of Title 18, U.S.C., §§ 1951 and

2. Count II of that Indictment charged that the four defendants, aided and abetted by each other, Possessed a Firearm in Furtherance of a Crime of Violence in violation of Title 18, U.S.C., §§ 924(c) and 2. The allegations of Count II provided that the firearm was brandished during the commission of that crime. At the time of the Indictment, Charla Dinkins was incarcerated in state custody for the same offense conduct as the federal charge.

The offense conduct charged in the Indictment was that the four defendants used a firearm to commit an armed robbery of the Jayson Jewelry store in Cape Girardeau, Missouri, on September 23, 2009.

Dinkins was brought into federal court pursuant to a writ and made her first appearance on September 11, 2013, before United States Magistrate Judge Lewis M. Blanton. Attorney Amanda L. Oesch was appointed to represent Dinkins.

**B. Pretrial Motions.**

On October 21, 2013, Dinkins' attorney filed a waiver of Dinkins' right to file pretrial motions. On October 30, 2013, Dinkins appeared before Judge Blanton and waived her right to file pretrial motions. The case was set for a guilty plea hearing on January 27, 2014.

**C. The Plea Agreement.**

Dinkins and the Government reached a plea agreement that was reduced to writing. That Plea Agreement sets out the parties' bargain and understandings as to the disposition of her case.

Dinkins agreed to plead guilty to Count I (Aiding and Abetting the Interference With Commerce by Robbery) and Count II (Aiding and Abetting the Possession of a Firearm During and In Relation to a Crime of Violence) of the Indictment. The Government agreed that it would not charge Dinkins with any other crimes related to the robbery of Jayson Jewelers on September 23, 2009. The parties agreed that either party could request a sentence above or below Dinkins' applicable Sentencing Guideline range.

Dinkins and the Government agreed to a Statement of Facts for her offense conduct that was set out in the Plea Agreement. Those facts that Dinkins agreed to are as follows:

> On September 23, 2009, at around 10:30 a.m., Charla Dinkins parked her rented vehicle across the street from the Jayson Jewelers store on Kingshighway Street in Cape Girardeau, Missouri. Kevin Stitt, Darryl House and Keyessence Fountain were in the car with Dinkins. The four had driven to Cape Girardeau from Memphis, Tennessee. Charla Dinkins had rented a vehicle for that trip. On that morning, the four of them had decided to commit an armed robbery of the Jayson Jewelers store. Dinkins, Fountain and Stitt had seen Darryl House with a handgun and knew that he was going to use the handgun to commit the robbery. The plan was that Dinkins was to be left with the car as a getaway driver while the other three entered and took jewelry and other valuables from the store.
>
> As soon as they could determine that the store was open and no customers were present, Dinkins drove her car to a location near the jewelry store. Kevin Stitt and Keyessence Fountain got out of the rental car and entered the Jayson Jewelers store, posing as a couple interested in wedding rings. Debra Drerup was the store clerk on duty that day. Ms. Drerup asked if she could help the couple. Stitt and Fountain replied that they would like to see some wedding rings. Ms. Drerup seated the couple at a counter and began to show them some rings. Shortly after that, Darryl House entered the store carrying a silver handgun. House pointed the handgun at Ms. Drerup. Drerup saw the handgun and realized that the three people were about to rob the jewelry store. Drerup, who was afraid of being hurt if she resisted, went with Stitt into a back room. Stitt placed handcuffs on her wrists, then wrapped duct tape on top of the handcuffs and over her eyes. Ms. Drerup was then left in the back room. House, Stitt and Fountain took jewelry and cash from the store, then walked out to a car being driven by Charla Dinkins. The four then

left to return to Memphis, Tennessee. After a short while, Ms. Drerup pulled the tape off and was able to call the police. Officers arrived and discovered that $91,216 in jewelry and $300 in cash had been taken from the store. No suspects were identified from the initial investigation. Samples from the store were submitted to the Missouri State Highway Patrol laboratory for their analysis.

On May 21, 2012, Cape Girardeau police officers received a report from the laboratory that DNA had been recovered from the handcuffs used to secure Ms. Drerup. That DNA matched a known sample taken from Kevin Stitt, who was in a prison in Tennessee at that time. Cape Police Sergeant Don Perry went to speak with Stitt at prison. After a short time, Stitt admitted that he, House, Fountain and Dinkins robbed the jewelry store. He said that the four drove from their homes in Memphis to Cape Girardeau for the purpose of robbing the jewelry store. House and Dinkins had purchased a set of handcuffs the night before to use in securing the store clerk. Stitt reported that House took the jewelry stolen from the store and disposed of it.

The jewelry stolen from Jaysons Jewelers was manufactured in a location other than the State of Missouri and affected interstate and/or foreign commerce. The location of the robbery of the Jayson Jewelry store was in Cape Girardeau County, within the Eastern District of Missouri.

By this plea, Charla Dinkins admits that she participated in the armed robbery of the Jayson Jewelers store by acting as the getaway driver and that she was part of an agreement between herself, House, Fountain and Stitt to rob the jewelry store with Darryl House's firearm.

The parties agreed that the offense level applicable to Count I was 20, pursuant to U.S.S.G., § 2B3.1(a). Dinkins and the Government agreed that 2 levels should be added pursuant to U.S.S. G., § 2B3.1(b)(4)(B), because a victim was physically restrained to facilitate the commission of the offense and to facilitate the escape. The parties also agreed that 2 levels should be added pursuant to U.S.S.G., § 2B3.1(b)(7)(C), because the loss resulting from the robber exceeded $50,000. The Plea Agreement provided that Dinkins would receive the full reduction for acceptance of responsibility of 3 levels. The parties agreed that the Total Offense Level should be set at 21. The parties agreed that

there was no applicable offense level for Count II as the punishment for that offense was set by statute at seven years imprisonment to be served consecutively.

The parties agreed to waive their rights to appeal all non-sentencing issues, and agreed to waive their right to appeal any sentence within the applicable Guideline range. Dinkins also agreed to waive her right to appeal any sentence below the applicable Guideline range.

Dinkins agreed to waive her right to file any post-conviction pleading, including a § 2255 petition, except for claims of prosecutorial misconduct or ineffective assistance of counsel. That waiver was set out as follows:

> The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**D. Guilty Plea Hearing.**

Dinkins and her attorney appeared before this Court on March 10, 2014, in order to plead guilty to the Indictment, pursuant to their written Plea Agreement. This Court set the case for a sentencing hearing on June 9, 2014.

**E. The Presentence Investigation Report.**

After the plea, United States Probation Officer Kenneth W. Lawrence prepared a Presentence Investigation Report (PSR) for the District Court. The PSR recommended that Dinkins receive a total offense level of 21 for Count I, which was the same level as agreed to by the parties in their Plea Agreement. Count II did not have any offense levels,

but carried a mandatory minimum term of imprisonment of seven years, to be served consecutively with any other sentence. (PSR, ¶ 29 – 39)

The PSR recommended a Sentencing Guideline range of 37 to 46 months for Count I and 84 months for Count II.

No objections were filed to the PSR by either party.

**F. Sentencing Hearing.**

On June 9, 2014, this Court conducted a sentencing hearing. Dinkins was sentenced to a term of imprisonment of 18 months for Count I and 84 months for Count II, with those two terms to run consecutively for an aggregate term of 102 months. The sentence for Count I was due to this Court granting Dinkins a downward variance. Dinkins was ordered to pay a $200 special assessment and to serve five years of supervised release. Dinkins was also ordered to pay $93,461.00 in restitution.

**G. The Appeal.**

Dinkins did not appeal her conviction or sentence.

**H. Petition for Post-Conviction Relief Pursuant to § 2255.**

On June 1, 2015, Dinkins filed her Petition under 28 U.S.C., § 2255, asking that this Court set aside or vacate her sentence for Count II and resentence her only on Count I. Dinkins raised three different grounds in her § 2255 petition.

### APPLICABLE LAW

**A. Need for Evidentiary Hearing and Burden of Proof**

28 U.S.C. § 2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner=s factual averments as true, but the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id*., at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show

7

petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

### B. Ineffective Assistance of Counsel

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question,

then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

## DISCUSSION

**Ground one. Violation of 10th Amendment Rights.**

In this ground, Dinkins contends that her 10th Amendment rights were violated. She does not specify exactly how those rights were violated, but asserts that this Court erred by sentencing her on Count II of the Indictment (Possession of a Firearm in Furtherance of a Crime of Violence). She states that the violation of her 10th Amendment rights occurred by this Court "adopting probation office and prosecutions' assessment of Movants involvement as it relates to Count 2 of the plea agreement."

Other defendants have tried to assert that the Tenth Amendment prevents their prosecution for a violation of Title 18, U.S.C. § 924(c). That argument has been advanced, and rejected, in the Eighth Circuit in *United States v. McMillian*, 535 F.2d

9

1035, 1037 FN1 (8th Cir. 1976); *United States v. Brown*, 72 F.3d 96, 97 (8th Cir. 1995); and *United States v. Bell*, 90 F.3d 318, 320-21 (8th Cir. 1996). The same argument has been rejected in other circuits that have considered it. *See United States v. Ricketts*, 317 F.3d 540, 543 (3rd Cir. 2003); *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993) ("Accordingly, we hold that Owens' prosecution and convictions under . . . and 18 U.S.C. § 924(c) do not run afoul of the Tenth Amendment."); *United States v. Dumas*, 934 F.2d 1387, 1390 (6th Cir. 1990);

In *McMillian*, *supra*, the defendants were convicted of the robbery of a credit union with a firearm. These defendants also raised the issue that the Tenth Amendment prohibits the Government from charging a defendant with a § 924(c) violation. That argument was rejected in Footnote 1 to the decision, which stated, in part:

> In a supplemental pro se brief, the defendants also argue that Congress lacked constitutional authority to enact the statutes under which they were convicted. Defendants' contentions are without merit. . . . We similarly find the defendants' argument that 18 U.S.C. § 924(c) is not within the scope of Congress' power to regulate interstate commerce and therefore reserved to the states by the Tenth Amendment, unpersuasive.

*McMillian*, 535 F.2d at 1037, FN1.

Dinkins' claim, that the Tenth Amendment is a bar to her prosecution for a violation of Title 18, U.S.C. § 924(c), is incorrect as a matter of law. The Tenth Amendment does not prohibit her prosecution for aiding and abetting the brandishing of a firearm in furtherance of a robbery that may be prosecuted in federal court. There is no error in her conviction or sentence.

**Ground two. Ineffective Assistance of Counsel.**
   **Waiver of Right of File a § 2255 Petition.**

In this ground, Dinkins claims that her waiver of her right to appeal her sentence "via a § 2255 motion" is "by definition is uninformed and unintelligent and cannot be a voluntary and knowing prior to the sentence being imposed." Dinkins claims her counsel should not have allowed any waiver of her right to appeal in the plea agreement and that his failure to object to that provision renders her representation ineffective. Basically, Dinkins asserts that no counsel could ever validly advise their client to waive their right to file a § 2255 petition and that any such waiver should be invalid.

This Court notes that Dinkins had, in fact agreed to waive her right to file a § 2255 petition in her written Plea Agreement. However, the Government is not arguing that the Movant's petition be dismissed based on that waiver. Instead, the Government has answered Dinkins' petition as if she were alleging ineffective assistance of counsel on her remaining two issues.

Therefore, this issue is moot, given that the Government will address the merits of Dinkins' claims in her petition and will not seek to enforce her § 2255 petition waiver.

**Ground three. Improper Sentence.**
          **Whether Dinkins' Offense Conduct Was Sufficient to Permit Her to Be Sentenced for violating 18 U.S.C. § 924(c).**

In this ground, Dinkins claims that she should not have been found guilty or sentenced for a violation of 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence). Dinkins claims that, in her case, she was not implicated in the use or brandishing of a firearm. She contends that, since she did not carry or brandish a firearm, § 924(c) cannot be used to convict or sentence her.

Dinkins was charged with two crimes. Count I charged that Dinkins committed the offense of Aiding and Abetting the Interference With Commerce by Threat of Violence in violation of 18 U.S.C. §§ 2(a) and 1951. Count II charged that Dinkins committed the offense of Aiding and Abetting the Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. §§ 2(a) and 924(c). This issue only involves the charge in Count II.

> 18 U.S.C. § 2(a) states:
>
> > (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> 18 U.S.C. § 924(c) states, in relevant part:
>
> > (c)(1)(A) . . . any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, [be punished according to the statute].

The effect of both of these statutes is to allow the prosecution of a defendant for a § 924(c) violation where that defendant was a knowing co-conspirator to the use of the firearm in the underlying crime of violence.

Dinkins is arguing that since she was not the person who was actually carrying a firearm during the jewelry store robbery, she could not be found guilty of a § 924(c) charge, that of Aiding and Abetting the Possession of a Firearm in Furtherance of a Crime of Violence. Dinkins fails to acknowledge that she was aware, before the robbery, that her co-defendant, Darryl House, was carrying a firearm and that she knew he was

going to use it to commit the robbery. The relevant statements in her written Plea Agreement as to that issue are as follows:

> On September 23, 2009, at around 10:30 a.m., Charla Dinkins parked her rented vehicle across the street from the Jayson Jewelers store on Kingshighway Street in Cape Girardeau, Missouri. Kevin Stitt, Darryl House and Keyessence Fountain were in the car with Dinkins. The four had driven to Cape Girardeau from Memphis, Tennessee. Charla Dinkins had rented a vehicle for that trip. On that morning, the four of them had decided to commit an armed robbery of the Jayson Jewelers store. Dinkins, Fountain and Stitt had seen Darryl House with a handgun and knew that he was going to use the handgun to commit the robbery. The plan was that Dinkins was to be left with the car as a getaway driver while the other three entered and took jewelry and other valuables from the store.
>
> By this plea, Charla Dinkins admits that she participated in the armed robbery of the Jayson Jewelers store by acting as the getaway driver and that she was part of an agreement between herself, House, Fountain and Stitt to rob the jewelry store with Darryl House's firearm.

The written plea agreement makes clear the fact that, before the robbery, Dinkins knew that she was going to participate in a jewelry store robbery and that Darryl House was carrying a handgun that he was going to use to commit that robbery. There is no question that Dinkins was aware that one of her co-conspirators was going to use a handgun in order to rob the store. The only question is whether the Government can convict Dinkins of the crime of Possession of a Firearm in Furtherance of a Crime of Violence when her co-conspirator carried the firearm and Dinkins only knew that it was going to be used by the co-conspirator. Other Eighth Circuit cases have answered this question in the affirmative.

One case that discussed this issue is *United States v. Pate*, 932 F.2d 736 (8th Cir. 1991). Pate made exactly the same argument as Dinkins has, in that Pate argued that

since he was not the one to carry a firearm into a bank to rob it, he could not be guilty of a § 924(c) violation:

> Nevertheless, Pate denies that he used or carried the shotgun to effectuate the bank robbery. The sum of his position is that because he did not carry the weapon into the bank, he did not violate section 924(c). We disagree.

*Pate*, 932 F.2d at 738.

Another case that allowed a § 924(c) conviction for a defendant who did not actually possess the firearm involved was *United States v. Damm*, 133 F.3d 636 (8th Cir. 1998). Damm's conviction was upheld against a sufficiency of the evidence challenge due to the Government's evidence adequately supported that the firearm had some purpose or effect with respect to the robbery. *Id.*, at 639.

In a case factually similar to that of Dinkins, this Circuit considered this issue in the case of *United States v. Simpson*, 979 F.2d 1282 (8th Cir. 1992) (reversed on other grounds.) In *Simpson*, the defendant was the getaway driver for her co-defendant in their plan to rob a bank. Simpson had been charged with bank robbery and aiding and abetting a § 924(c) charge. The facts disclosed that Simpson did not possess the firearm used in the robbery of the bank, only her boyfriend co-defendant did. Dinkins makes exactly the same argument. The Eighth Circuit disposed of Simpson's arguments, as follows:

> First, the aider and abettor statute, 18 U.S.C. § 2, clearly states that the actions of the aider and abettor become those of a principal violation. Second, 18 U.S.C. § 924(c) explicitly states that one convicted as a principal of using a firearm to commit a violent crime may be punished both for the underlying crime and the § 924(c) charge. Because the actions of the principal here involve use of a gun falling within § 924(c)'s prohibitions, as aider and abettor, chargeable as a principal, is also clearly liable for the use of the gun.
>
> 18 U.S.C. § 2 provides that one who "aids, abets, counsels, commands, induces

14

> or procures" a crime against the United States "is punishable as a principal."
>
> . . .
>
> Under § 2, the acts of the principal become the those of the aider and abettor as a matter of law.
>
> . . .
>
> Here, Mark Grotte robbed a bank using a firearm. Simpson's conduct was integral to the crime. She provided the transportation and the means of concealment. Simpson also knew that Grotte possessed a firearm and planned to use it in committing the robbery. Because Simpson's actions aided the commission of the armed bank robbery, Grotte's actions, and his gun, became hers in the eyes of the law.

*Simpson*, 979 F.2d at 1285.

Another case allowing a getaway driver to be convicted of a § 924(c) charge where they did not actually handle a firearm is *United States v. Archie*, 656 F.2d 1253, 1259 (8th Cir. 1981).

When Dinkins pled guilty to her charges, she was informed as to the elements of each charge. Her written Plea Agreement contained the following elements that the Government would have had to prove if Dinkins had requested a trial:

> One, aided and abetted by others, the defendant committed the crime of Interference With Commerce by Threat or Violence;
>
> Two, the defendant knowingly possessed or knew that others that she aided and abetted knowingly possessed a firearm in furtherance of that crime; and
>
> Three, the firearm was brandished during the commission of the crime of Interference With Commerce by Threat or Violence.

Dinkins knew full well, before she pled guilty, (1) that she could be found guilty of this crime if her co-conspirators possessed a firearm in furtherance of the crime and (2)

15

that she could be found guilty even if she did not actually handle the gun in question. Dinkins cannot claim that she was unaware of the Government's burden of proof. Dinkins cannot deny that she admitted that she knew that Darryl House was going to use the gun in committing the crime and that she knew his intended use of the handgun before the crime was committed. Her written Plea Agreement contains exactly those factual representations. Dinkins admitted those facts as well as that she committed each and every element of that charge.

In short, Dinkins was convicted of Aiding and Abetting the Possession of a Firearm in Furtherance of a Crime of Violence as charged in § 924(c) because she was factually guilty of that charge. Dinkins is mistaken as to whether the Government was required to prove that she actually held a firearm in order to convict her of that charge.

## CONCLUSION

For the foregoing reasons, this Court denies Dinkins' § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Dinkins has not made a substantial showing of the denial of a federal constitutional right.

Dated this 22nd day of July, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE